UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Esther Sandoval,<br>　　　Plaintiff, | Case No. |
| v. | |
| Franciscan Alliance, Inc.,<br>　　　Defendant. | |

## INTRODUCTION

1.　　Plaintiff, Ms. Esther Sandoval, brings this action alleging violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621 et seq. ("ADEA") and Title VII against Franciscan Alliance, Inc., the Defendant.

## JURISDICTION AND VENUE

2.　　This court has original subject matter jurisdiction over ADEA and Title VII claims pursuant to 28 U.S.C.A. § 1331 because they arise under the laws of the United States.

3.　　Venue is proper in the Northern District of Indiana under 28 U.S.C.A. § 1391 because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District, including Defendant's alleged unlawful employment practices.

4.　　This District has personal jurisdiction over Defendant because it maintains offices in this District, does business in this District, and the acts complained of and giving rise to Plaintiff's claims occurred in this District.

5.　　Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging violations of the ADEA and Title VII. Plaintiff has exhausted all administrative remedies.

1

6. Plaintiff received a "right to sue letter" from the EEOC, a copy of which is attached hereto. (**Ex. A**).

## FACTUAL ALLEGATIONS

7. Ms. Esther Sandoval (hereinafter, "Ms. Sandoval") is a Hispanic female.

8. Franciscan Alliance, Inc. (hereinafter, "Franciscan") is a not-for-profit corporation duly organized and existing under the laws of the State of Indiana, with several hospitals located in Lake County, Indiana. Franciscan Health Hammond is an assumed business name of Franciscan Alliance.

9. Plaintiff is an Indiana resident.

10. Defendant is a large company that regularly employs more than fifteen (15) employees, making it subject to federal laws which prohibit discrimination, such as Title VII and the ADEA.

11. Ms. Sandoval worked at a Franciscan hospital in Hammond, Indiana.

12. Ms. Sandoval was employed with Defendant since 1978.

13. Ms. Sandoval is a hard worker who enjoyed every aspect of her job and was promoted to the billing department.

14. Ms. Sandoval consistently received praise on her annual performance evaluations.

15. After forty-two (42) years of working at Franciscan, Ms. Sandoval has faced obstacles and challenges that she would not have faced had she been younger or a White American.

16. Ms. Sandoval's previous supervisor was Sherry Kozlowski (hereinafter, "Ms. Kozlowski").

17. In an effort to describe the discriminatory work environment at Defendant's

facilities:

    a. Around eight (8) to ten (10) years ago, during the holiday season, Ms. Kozlowski created a racially-stereotypical meme video of Ms. Sandoval's face imposed on a mariachi singer singing and dancing to the Jose Feliciano Christmas song, "Feliz Navidad."

    b. When Ms. Sandoval formed a prayer group during Franciscan's daily chapel break, she being a devoutly religious Hispanic, Ms. Kozlowski scolded Ms. Sandoval for doing so.

    c. Ms. Sandoval, as part of the billing department, was to process billing statements in a way that met key performance indicators (hereinafter, "KPI"). In August 2018, Ms. Sandoval was assigned an account to review. When Ms. Sandoval noticed there was an edit on the account, she asked Ms. Kozlowski what the edit meant, to which Ms. Kozlowski replied that it was corrected. Ms. Sandoval still needed to complete the task; however, the issue was never resolved. A later e-mail revealed that Ms. Kozlowski trained two (2) of Ms. Sandoval's colleagues, who were White, on how to make said edits.

    d. Ms. Kozlowski told Ms. Sandoval that she could teach her how to edit, but that she (Ms. Sandoval), would probably have to write it down to remember, implying a failing memory. No records indicate that Ms. Kozlowski made such a comment to the younger or Non-Hispanic colleagues of Plaintiff.

    e. In 2019, Terri Townsend (hereinafter, "Ms. Townsend"), who is African-American, became Ms. Sandoval's new supervisor. Jan Boykin (hereinafter, "Ms. Boykin"), also African-American, becomes the manager. One day in 2019, Ms.

        Sandoval asked Ms. Townsend a question about how to resolve an assignment. Ms. Townsend asked Ms. Kozlowski about how to resolve the issue, to which Ms. Kozlowski replied, "Shouldn't [Ms. Sandoval] know that?", again implying a failing memory.

    f.    One of Ms. Sandoval's colleagues named Stefania, who is Caucasian, and less than 45 years old, regularly took family medical leave and would only come into the office two (2) or three (3) days per week. During those two (2) or three (3) days, Stefania would sometimes leave early. Stefania's accounts were regularly backlogged, and Ms. Sandoval would have to correct Stefania's assignments, in addition to the workload that Ms. Sandoval already had. Taking on those assignments caused Ms. Sandoval to fall behind and to miss the requisite KPIs.

    g.    To Ms. Sandoval's knowledge, Stefania was not reprimanded for missing her KPI's as she was always on FMLA and was excused.

    h.    Ms. Sandoval was forbidden by Defendant's managers from using overtime in order to catch up on her assignments and possibly meet her KPIs. Eventually, Stefania was moved to the medical records department, which one person in the office called "a cushion job," meaning that the workload is extremely easy.

18.    Despite consistently asking to know what her exact mistakes alleged were, Ms. Sandoval was never fully shown what her exact mistakes were.

19.    In March 2020, Franciscan workers began working from home due to the impact of the COVID-19 pandemic.

20.    During this time, Ms. Sandoval received training on how to improve her billing skills.

21. With Defendant's full knowledge, an African-American woman altered her KPIs. When it was brought to management's attention, neither she or her supervisor, nor management were reprimanded.

22. Defendant's managers held informative meetings with other billers but excluded Ms. Sandoval.

23. Regarding her performance, in early spring 2021, Ms. Sandoval's supervisors told her "We'll see how you do in May."

24. On or about July 1, 2021, Defendant's managers, Ms. Boykin, Ms. Townsend, and a Human Resources representative, participated in a computer chat with Ms. Sandoval.

25. During the chat, Defendant informed Ms. Sandoval that she was terminated effective immediately due to a failure to meet KPI.

26. When Ms. Sandoval asked about other employees who failed to meet KPI, the managers said they could not discuss other employees.

27. Defendant failed to tell Ms. Sandoval where she could collect her last paycheck, that she was eligible for unemployment, or when her employee benefits would lapse. Ms. Sandoval had to figure these things out on her own.

28. Defendant publicly communicated the termination because various workers around the hospital commented about how sad they were to see Ms. Sandoval.

29. During her tenure at Defendant, Plaintiff was a model employee and received exemplary internal performance reviews.

30. At the time she was fired, Plaintiff expected that her long and successful career with Defendant would continue for at least several more years to come. Plaintiff never expressed an intention to retire.

31. Plaintiff has also lost substantial income and other privileges and benefits of employment.

## FIRST CLAIM FOR RELIEF
### Intentional Age Discrimination

32. Plaintiff incorporates the preceding paragraphs as though set forth in full here.

33. Franciscan Alliance engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its older billers, including Plaintiff.

34. Defendant intentionally discriminated against Plaintiff in violation of the ADEA by, among other things:

   i. reducing Plaintiff's role and influence in the final years of her employment;

   j. targeting Plaintiff with age-motivated ridicule, public berating, and criticism;

   k. making derogatory statements about Plaintiff's age and memory;

   l. management favored another biller who had previously worked in Plaintiff's department and wanted her to return, however, she was not able to return while Ms. Sandoval occupied her position. Upon Ms. Sandoval's termination said biller was able to return and fill Ms. Sandoval's position.

   m. failing to take reasonable and adequate steps to prevent and correct Plaintiff's complaints which Defendant knew or should have known related to age discrimination.

35. Plaintiff believes and alleges that Franciscan discriminated against Plaintiff due to her age through other acts, of which Plaintiff is presently unaware and which will be shown in the course of discovery.

36. The discriminatory acts that constitute Defendant's pattern and/or practice of age discrimination have occurred both within and outside the liability period in this case.

6

37. As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiff suffered damages including, but not limited to, lost past and future income, compensation, and other benefits of employment.

38. Franciscan's practices are unlawful employment practices that discriminate and are in violation of the ADEA.

39. Because of Franciscan's discriminatory acts stated herein and other discriminatory acts not herein stated, Ms. Sandoval was hindered from fully growing as a billing employee, from being able to show that she could meet or exceed expectations, wrongfully disciplined for actions that her younger colleagues were not disciplined for, denied the opportunity to work in a less hostile environment, and has been humiliated among her former colleagues.

40. Plaintiff requests relief as described below.

## SECOND CLAIM FOR RELIEF
### Race Discrimination

41. Plaintiff incorporates the preceding paragraphs as though set forth in full here.

42. Defendant violated Title VII by discriminating against Plaintiff due to her race and ethnic heritage.

43. Defendant took tangible adverse employment actions against Plaintiff, by and through the actions of their agents, when, they terminated her.

44. A legitimate, nondiscriminatory reason does not exist to justify Defendant's intentional, disparate, and retaliatory treatment of Plaintiff.

45. Franciscan's practices are unlawful employment practices that discriminate and are in violation of Title VII.

46. Because of Franciscan's discriminatory acts stated herein and other

discriminatory acts not herein stated, Ms. Sandoval was hindered from fully growing as a billing employee, from being able to show that she could meet or exceed expectations, wrongfully disciplined for actions that her White and non-Hispanic colleagues were not disciplined for, denied the opportunity to work in a less hostile environment, and has been humiliated among her former colleagues.

47. Plaintiff requests relief as described below.

### THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

48. Plaintiff incorporates the preceding paragraphs as though set forth in full here.

49. Franciscan Alliance acted intentionally or recklessly with regard to Plaintiff's employment rights and personal well-being, in a manner that was so outrageous in character, and so extreme in degree, as to be beyond reasonable standards of decency.

50. This conduct includes, but is not limited to, publicly belittling Plaintiff in the final years of her employment, reducing Plaintiff's role and influence after more than four decades as a biller at Franciscan, spreading false rumors about Plaintiff's continued employability with Defendant, forcing Plaintiff into an early retirement, and lying publicly about the circumstances of Plaintiff's termination in an effort to harm her future employability with the Defendant.

51. As a direct and proximate result of Franciscan's wrongful conduct, Plaintiff has sustained and will continue to sustain severe emotional distress, mental anguish, economic losses and other damages. Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

52. Plaintiff requests relief as described in this Complaint.

## FOURTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

53. Plaintiff incorporates the preceding paragraphs as alleged above.

54. Franciscan acted carelessly and negligently regarding Plaintiff's right to work in an environment free from discrimination and retaliation.

55. This conduct includes, but is not limited to, publicly belittling of Plaintiff in the final years of her employment, reducing Plaintiff's role and influence after more than four decades as a biller at Franciscan, spreading false rumors about Plaintiff's continued employability with Defendant, forcing Plaintiff into an unwanted "retirement," and lying publicly about the circumstances of Plaintiff's termination, in an effort to harm her future employability with the defendant.

56. As a direct and proximate result of Franciscan's wrongful conduct, Plaintiff has sustained and will continue to sustain severe emotional distress, mental anguish, economic losses and other damages. Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

57. Plaintiff requests relief as described in this Complaint.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

A. A declaratory judgment that the practices complained of are unlawful and violate the ADEA and Title VII;

B. A preliminary and permanent injunction against Franciscan and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff

because of her age or race or participation in this lawsuit;

  C. An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race or age, and that it eradicate the effects of their past and present unlawful employment practices;

  D. An order for front pay benefits;

  E. An order for back pay (including interest and benefits);

  F. All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

  G. Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

  H. Costs incurred in this action, including reasonable attorneys' fees to the extent allowable by law;

  I. Pre- and post-judgment interest, as provided by law; and

  J. Such other and further legal and equitable relief as this court deems necessary, just, and proper.

Dated: August 1, 2022

Respectfully submitted,

/s/Daniel Zamudio
Daniel Zamudio
Zamudio Law Professionals, PC
233 South Colfax
Griffith, Indiana 46319
Phone (219) 924-2300
Fax (219) 924-2401
dan@zlawpro.com